**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

'FILED BY _____ D.C.

05 AUG 30  AM 6: 54

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN, MEMPHIS

| | | |
|---|---|---|
| TIMOTHY GREEN, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 03-2991 M1/V |
| MEMPHIS CITY GOVERNMENT, | ) | |
| MEMPHIS POLICE DEPARTMENT, | ) | |
| MAJOR O'BYRNES, in his | ) | |
| individual and official | ) | |
| capacities, LIEUTENANT | ) | |
| HIGHTOWER, in his individual | ) | |
| and official capacities, | ) | |
| LIEUTENANT BALLARD, in his | ) | |
| individual and official | ) | |
| capacities, and LIEUTENANT | ) | |
| EMBRY, in his individual | ) | |
| and official capacities, | ) | |
| | ) | |
|     Defendants. | ) | |
| | ) | |

---

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT OF DEFENDANT CITY OF MEMPHIS
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS MAJOR O'BYRNES AND LIEUTENANT HIGHTOWER
and
ORDER SETTING TELEPHONE CONFERENCE**

---

Before the Court are two Motions for Summary Judgment, one by Defendant City of Memphis, and the second by Defendants Major O'Byrnes and Lieutenant Hightower.  The motions were filed on January 10, 2005.   After certain intervening matters[1], Plaintiff

---

[1] Plaintiff did not originally respond to these motions.  On February 23, 2005, the Court ordered Plaintiff to show cause within ten (10) days why Defendants' motions should not be
(continued...)

This document entered on the docket sheet in compliance with Rule 58 and/or 79(a) FRCP on 8-30-05

50

filed a Notice of Filing Affidavits in Support of Denial of Motion
for Summary Judgment on July 5, 2005, and a Memorandum of Law in
Response Objecting to Motion for Summary Judgment Filed by the City
of Memphis and Major O'Byrnes and Major Hightower on July 14, 2005.
Defendant City of Memphis and Defendants O'Byrnes and Hightower
filed separate replies on July 28, 2005.  For the following
reasons, Defendants' motions are GRANTED and Plaintiff's claims are
DISMISSED.

## I. BACKGROUND

The instant action arises from the employment of Plaintiff
Timothy Green, an African-American Sergeant in the Memphis Police
Department.  Plaintiff's Complaint alleges violations of Title VII
of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, 42
U.S.C. § 1981, 42 U.S.C. 1983, and 42 U.S.C. § 1985(3) against all
Defendants due to an alleged "conspiracy of harassment and
oppression based upon race and retaliation for opposition to
unlawful practice and participation in investigation." (Pl.'s
Compl. ¶ 1.)  Defendants contend that Plaintiff's claims are barred
by the relevant statutes of limitations, that they are entitled to
qualified immunity from suit, and that they are entitled to

_____

(...continued)
granted.  Plaintiff did not respond to the Court's show cause
order.  Accordingly, on March 9, 2005, the Court granted
Defendants' motions and entered judgment in favor of Defendants.
On April 11, 2005, the Court granted Plaintiff relief from that
judgment.  After a subsequent telephone conference, the Court re-
opened discovery and allowed Plaintiff to file a response to
Defendants' motions.

judgment as a matter of law on all of Plaintiff's claims.[2]

The facts relevant to Plaintiff's claims are largely undisputed.  Plaintiff, who currently holds the rank of Sergeant, has been an employee of the Memphis Police Department since 1985.  During the Spring of 2001, Plaintiff was assigned to the Robbery Division.  While employed in that division, he was under the command of Major O'Byrnes and Lts. Ballard, Moore, Hightower and Goods.  Plaintiff worked the "B" shift along with between 15 and 20 other officers.  The number of African-American employees working the B shift ranged from three to eight.  In particular, during Plaintiff's tenure, the following African-American employees worked in the Robbery department: Plaintiff, Lts. Goods and Moore, Sgts. Bracey and Bell, and Patrolman Price.  Plaintiff was granted a transfer to the Auto Theft Bureau effective November 9, 2002.  Plaintiff has remained in the Auto Theft Bureau since that date.

Plaintiff alleges that he was subject to disparate treatment and harassment while he worked in the Robbery Division.  In particular, Plaintiff alleges that on two occasions, an arrest photo of Plaintiff which showed Plaintiff's picture in a photo spread along with pictures of five other arrestees was placed on a

---

[2] On December 15, 2004, Plaintiff's claims against Defendants O'Byrnes and Hightower under 42 U.S.C. § 2000e and against Defendant O'Byrnes under 42 U.S.C. § 1983 were dismissed after Plaintiff failed to respond to Defendants' motions to dismiss and an to order to show cause why those motions should not be granted.  (Order Granting Motion to Dismiss by Defendants Major O'Byrnes and Lieutenant Hightower, December 15, 2004 (Docket No. 24).)

wall in the Robbery Division, with a red circle around Plaintiff's picture and a notation to the effect of "this is the man who raped me while he was in jail." Plaintiff testified at his deposition, however, that he does not know who placed the photo on the wall and that Lt. Moore removed the photo after Plaintiff informed him about it. (Dep. of Timothy Green at 32, attached as unnumbered exhibit to Mot. for Summ. J. by Defs. Major O'Byrnes and Lt. Hightower.)

Plaintiff also alleges that Major O'Byrnes and Lt. Hightower denied him the opportunity to take "swap days" to allow him to engage in certain outside employment. However, Plaintiff testified at his deposition that some of his requests were denied and some were granted and that he has no information regarding whether Major O'Byrnes and Lt. Hightower also denied "swap days" to any other officers in the Robbery Division. (Id. at 224.)

Plaintiff also contends that he was the only officer who was told that he could not use his cell phone and that he was repeatedly instructed to remove his cell phone headset in his office. However, Plaintiff testified at his deposition that all of the other officers in the Robbery Division were able to use their cell phones, including Sgt. Bracey, who is African-American, and that no other officer spent as much time on his cell phone as he did. (Id. at 43-44.)

Plaintiff further alleges that he was subject to differential treatment on account of his race. Plaintiff testified at his deposition, however, that this allegation only referred to one

-4-

incident in which Lt. Hightower questioned Plaintiff's request for overtime on one day. (Id. at 45-46.) Plaintiff also testified that his authorization to work the overtime was confirmed and that he was not disciplined for the incident. (Id.)

Plaintiff also alleges that Major O'Byrnes denied him due process by imposing a one-day suspension on Plaintiff that was based upon a false allegation. However, Plaintiff admits that he received a notice of hearing and a statement of charges regarding the allegation, that he attended an administrative hearing on February 5, 2005, at which he was issued a one-day suspension, that an appeal hearing was scheduled at his request on February 11, 2002, that he failed to appear at that hearing, and that as a result of his nonappearance, the suspension was upheld. (Id. at 158-64.) Although Plaintiff contends that he was told by Major O'Byrnes to drop his appeal of the suspension, Plaintiff admits that he did not file a grievance or pursue any administrative remedy to protest the one-day suspension. (Id. at 61.) Plaintiff also admits that he received this one-day suspension before he filed his original Equal Employment Opportunity Commission complaint. (Dep. of Timothy Green, attached as Ex. 56 to Def. City of Memphis' Mot. for Summ. J.)

Plaintiff also alleges that his supervisors required him to ride only with Caucasian officers when investigating cases. However, Plaintiff testified at his deposition that he was told he could not ride with Sgt. Bell, but that he could ride with any

other officer in the Robbery Division. (Dep. of Timothy Green at
73-74, attached as unnumbered exhibit to Mot. for Summ. J. by Defs.
Major O'Byrnes and Lt. Hightower.)

Plaintiff further alleges that Major O'Byrnes and Lt.
Hightower would yell at him in front of other officers regarding
workplace issues, whereas they would discuss work issues related to
other officers in private.  During his deposition, however,
Plaintiff testified that he could not recall more than two specific
instances involving a public discussion of his work, and he was not
disciplined following those incidents. (Dep. of Timothy Green at
25, attached as unnumbered exhibit to Mot. for Summ. J. by Defs.
Major O'Byrnes and Lt. Hightower.)  Plaintiff also alleges that
Major O'Byrnes treated him differently than the other officers
because he was required to sign in and out of the office.  However,
Plaintiff admitted at his deposition that other officers were
required to sign in and out. (Id. at 26.)  Further, Plaintiff
stated at his deposition that he does not recall receiving any
written discipline for his failure to sign in or out and is unaware
of whether any other officers on his shift were disciplined for
their failure to sign in or out. (Id. at 27-28.)

As noted above, Plaintiff transferred from the Robbery
Division to the Auto Theft Division effective November 9, 2002, and
has worked in the Auto Theft Division since that date.  On March
14, 2003, Plaintiff filed a complaint with the United States Equal
Employment Opportunity Commission alleging discrimination and

harassment due to his race.  On May 2, 2003, Plaintiff contends that the desk of his brother, Sgt. William Green, was removed from the Robbery Division office by Lt. Hightower and that his brother's property was damaged in the process.

## II. SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  So long as the movant has met its initial burden of "demonstrat[ing] the absence of a genuine issue of material fact," Celotex, 477 U.S. at 323, and the nonmoving party is unable to make such a showing, summary judgment is appropriate. Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989).  In considering a motion for summary judgment, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

When confronted with a properly-supported motion for summary judgment, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P.

-7-

56(e); see also Abeita v. TransAmerica Mailings, Inc., 159 F.3d 246, 250 (6th Cir. 1998). A genuine issue of material fact exists for trial "if the evidence [presented by the nonmoving party] is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In essence, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

## III. ANALYSIS

Defendants move for summary judgment on all of Plaintiff's claims. The Court will first analyze Plaintiff's claims under Title VII before moving to Plaintiff's claims under 42 U.S.C. §§ 1981, 1983, and 1985(3).

### A. Title VII

Defendants move for summary judgment on Plaintiff's claims of race discrimination, racial harassment, and retaliation pursuant to Title VII. The Court will analyze these claims in turn.

#### 1. Race Discrimination

In the absence of direct evidence of discrimination, race discrimination claims are analyzed under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and refined in Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981). Under this approach, a plaintiff must first establish a *prima facie* case of discrimination. Burdine, 450 U.S.

at 252.

To establish a *prima facie* case of race discrimination, a plaintiff must show that: (1) he was a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the position; and (4) he was replaced by someone outside the protected class or was treated differently from a similarly situated employee outside his protected class. Warfield v. Lebanon Corr. Inst., 181 F.3d 723, 728-29 (6th Cir. 1999). Establishing a *prima facie* case creates a rebuttable presumption that the employer engaged in unlawful discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993).

Once the plaintiff has established a *prima facie* case, the burden shifts to the employer to produce a legitimate, non-discriminatory reason for the adverse employment action. Burdine, 450 U.S. at 252-53. The burden is not onerous. An employer will satisfy its burden as long as it articulates a valid rationale for its decision. Hartsel v. Keys, 87 F.3d 795, 800 (6th Cir. 1996).

If the employer meets this burden, the plaintiff may still prevail if he shows that the reasons offered by the defendant are a pretext for discrimination. Burdine, 450 U.S. at 253. To prove pretext, the plaintiff must introduce admissible evidence to show "that the proffered reason was not the true reason for the employment decision" and that racial animus was the true motivation driving the employer's determination. Hicks, 509 U.S. at 508. Throughout the analysis, the ultimate burden of proof remains with

-9-

the plaintiff.  Id. at 511.

### i. *Prima Facie* Case

Although it is undisputed that Plaintiff is a member of a protected class based upon his race, and that he was qualified for his position in the Robbery Division, Defendants contend that Plaintiff cannot establish a *prima facie* case of race discrimination because he has failed to show that he suffered any adverse employment action or that he was treated differently from anyone outside his protected class.

In order to prove that he has suffered an adverse employment action, a plaintiff must show that he suffered "a materially adverse change in the terms of [his] employment." White v. Burlington Northern & Santa Fe R.R. Co., 364 F.3d 789, 797 (6th Cir. 2004)(citing Kocsis v. Multi-Care Management, Inc., 97 F.3d 876, 885-87 (6th Cir. 1996)).  A "mere inconvenience or an alteration of job responsibilities" or a "bruised ego" is not enough to constitute an adverse employment action. Id. (citations omitted).  Having reviewed the record and the parties' submissions, the Court finds that Plaintiff fails to point to sufficient evidence in the record to show that he suffered any adverse employment action.  In particular, Plaintiff points to his allegations that he was singled out for scrutiny regarding overtime pay, swap time, and cell phone usage.  However, Plaintiff testified during his deposition that his request for overtime pay was only questioned on one occasion and that his request was granted, that

-10-

some of his requests for swap time was granted and others were denied, and that, of all the officers in the Robbery Division, he spent the most time on his cell phone. The undisputed evidence thus shows that the allegedly discriminatory acts to which Plaintiff points did not amount to a materially adverse change in his employment.

In determining whether employees are similarly situated, "the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in 'all of the *relevant* aspects.'" Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 352 (6th Cir. 1998)(citation omitted). In the disciplinary context, the comparable employees outside of Plaintiff's protected class "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992). Plaintiff fails to point to any particular similarly-situated individuals outside his protected class who were treated differently than Plaintiff.[3] Rather, the undisputed evidence shows

---

[3] Although Plaintiff points to the affidavits of Patrolman J.B. Bell and Officer Curtis Price in support of his contentions, the affidavits merely state the officers' opinions regarding the allegedly discriminatory nature of certain of Plaintiff's allegations; they do not set forth facts to support Plaintiff's claims. (See Aff. of J.B. Bell and Aff. of Curtis Price, attached as Exs. A and B, respectively, to Pl.'s Not. Of Filing of Aff's in Supp. of Denial of Mot. for Summ. J.)

that Plaintiff was either treated equally to similarly-situated co-
workers or that his conduct involved circumstances that
distinguished his conduct and his employer's treatment of it.

Plaintiff has therefore failed establish a *prima facie* case of
race discrimination pursuant to Title VII.  Accordingly,
Defendants' motions to dismiss Plaintiff's race discrimination
claims under Title VII are GRANTED and Plaintiff's claims are
DISMISSED.

### 2. Racial Harassment

Title VII also prohibits racial harassment that creates a
hostile or abusive work environment. Newman v. Federal Exp. Corp.,
266 F.3d 401, 405 (6th Cir. 2001)(citation omitted).  In order to
establish a *prima facie* case of hostile work environment harassment
based on race under Title VII, a plaintiff must show: "1) that he
is a member of a protected class; 2) that he was subjected to
unwelcome racial harassment; 3) that the harassment was based on
race; 4) that the harassment had the effect of unreasonably
interfering with his work performance by creating an intimidating,
hostile, or offensive work environment; and 5) the existence of
employer liability." Id. (citation omitted).  To determine whether
a workplace environment was hostile or abusive, the Court looks to
the totality of the circumstances. Id. (citing Faragher v. City of
Boca Raton, 524 U.S. 775, 787-88 (1998)).  In particular, the Court
considers "the frequency of the discriminatory conduct; its
severity; whether it is physically threatening or humiliating, or a

-12-

mere offensive utterance; and whether it unreasonably interferes
with an employee's work performance." Id. (quoting Harris v.
Forklift Sys., Inc., 510 U.S. 17, 23 (1993)).  The Supreme Court
has consistently held that "simple teasing, offhand comments, and
isolated incidents (unless extremely serious) will not amount to
discriminatory changes in the terms and conditions of employment."
Id. (quoting Faragher, 524 U.S. at 788 (internal quotations
omitted)).  Finally, the work environment must be both objectively
and subjectively offensive.  Id. (citing Harris, 510 U.S. at 21-
22).

     Having reviewed the record and the parties' submissions, the
Court finds that Plaintiff has failed to point to sufficient
evidence in the record to create a genuine issue of material fact
regarding his claims of racial harassment.  Although it is
undisputed that Plaintiff is a member of a protected class based
upon his race, Plaintiff points to no evidence in the record to
show that any alleged harassment was based upon his race, that it
unreasonably interfered with his work performance, or that his
employer should be held liable for any alleged harassment.  Rather,
considering the totality of the circumstances, the Court finds that
Plaintiff's allegations do not indicate that the work environment
was both objectively and subjectively hostile.  Accordingly,
Defendants' motions to dismiss Plaintiff's claims of racial
harassment under Title VII are GRANTED and Plaintiff's claims are
DISMISSED.

### 3. Retaliation

Title VII also prohibits an employer from retaliating against an employee for engaging in protected activity under Title VII. Abbott v. Crown Motor Co., 348 F.3d 537, 542 (2003); 42 U.S.C. § 2000e-3(a).  Regarding the definition of "protected activity," Title VII provides, in pertinent part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a), quoted in DiCarlo v. Potter 358 F.3d 408, 420 (6th Cir. 2004).  In the absence of direct evidence of retaliation, such claims are analyzed according to the McDonnell Douglas burden-shifting framework described above.  Abbott, 348 F.3d at 542.

"To establish a *prima facie* case of retaliation pursuant to Title VII, a plaintiff must therefore show that: (1) he engaged in an activity protected by Title VII; (2) the defendant knew he engaged in this protected activity; (3) thereafter, the defendant took an employment action adverse to him; and (4) there was a causal connection between the protected activity and the adverse employment action." Smith v. City of Salem, Ohio, 378 F.3d 566, 570 (6th Cir. 2004)(citations omitted).

Having reviewed the record and the parties' submissions, the Court finds that Plaintiff has failed to point to sufficient

-14-

evidence in the record to create a genuine issue of material fact
regarding whether he was retaliated against for engaging in
activity protected by Title VII.  In particular, Plaintiff has not
pointed to any evidence in the record to show that the Defendants
knew he engaged in protected activity, that he suffered any adverse
employment action, or that any causal connection existed between
his protected activity and any alleged adverse employment action.
Rather, the record indicates that the only alleged adverse
employment action to which Plaintiff points - the moving of his
brother's desk in May of 2003 - did not involve Plaintiff and
occurred long after he had left the Robbery Division.  Accordingly,
Defendants' motions for summary judgment regarding Plaintiff's
claims of retaliation pursuant to Title VII are GRANTED and
Plaintiff's claims are DISMISSED.

### B. 42 U.S.C. §§ 1981, 1983 and 1985(3)

Defendants also contend that they are entitled to summary
judgment regarding Plaintiff's claims under 42 U.S.C. §§ 1981, 1983
and 1985(3) because they are barred by the statute of limitations,
because Defendants Major O'Byrnes and Lt. Hightower are entitled to
qualified immunity, and because even if the claims could proceed,
they fail on their merits.  The Court will analyze these
contentions in turn.

### 1. Statute of Limitations

Defendants first contend that Plaintiff's claims are barred by
the statute of limitations.  In actions brought under federal civil

rights statutes, state law governs the duration of the statute of limitations.  <u>Sharpe v. Cureton</u>, 319 F.3d 259, 266 (6th Cir. 2003). Under Tennessee law, there is a one year statute of limitations for federal civil rights claims.  Tenn. Code. Ann. § 28-3-104(a)(3). Generally, the statute of limitations begins to run on "the date when the plaintiff knew or through the exercise of reasonable diligence should have known of the injury that forms the basis of his action."  <u>Id.</u>  This is an objective test whereby the Court determines "'what event should have alerted the typical lay person to protect his or her rights.'"  <u>Id.</u>

All of Plaintiff's allegations involve conduct that occurred while Plaintiff was an employee in the Robbery Division.  It is undisputed that Plaintiff transferred from the Robbery to the Auto Theft Division effective November 9, 2002.  Plaintiff filed his Complaint on December 31, 2003, more than one year after he left the Robbery Division. (See Pl.'s Compl.)  Accordingly, Plaintiff's §§ 1981, 1983 and 1985(3) claims are untimely.

In his response to Defendants' motions, Plaintiff contends that Defendants' actions were continuing despite his November, 2002, transfer and that "defendant O'Byrnes utilized his influence not only within the Robbery Division but to division [sic] outside." (Mem. of Law in Resp. Obj. to Mot. for Summ. J. Filed by the City of Memphis and Major O'Byrnes and Major Hightower.)[4]  In

---

[4] The pages of Plaintiff's memorandum in response to Defendants' motions are not numbered.

particular, Plaintiff points to the incident where his brother's
desk was removed from the Robbery Division office by Lt. Hightower.
Plaintiff contends that his brother was singled out for that
treatment because Plaintiff had filed an EEOC Complaint.  That is
the only incident that occurred subsequent to Plaintiff's departure
from the Robbery Division in November of 2002 to which Plaintiff
points to support his claims.

Because this incident did not involve any violation of
Plaintiff's rights, however, it cannot form the basis for his §§
1981, 1983 and 1985(3) claims.  Even assuming that it could form
the basis of a continuing violation under those statutes, in order
to establish a continuing violation, Plaintiff must show that the
incident regarding his brother's desk is indicative of a pattern of
similar discriminatory acts continuing from the period prior to the
limitations period. See Weigel v. Baptist Hosp. of East Tennessee,
302 F.3d 367, 376-77 (6th Cir. 2002)(defining continuing violation
in the context of an ADEA claim).  The violation within the
limitations period must be "sufficiently similar or related to the
time-barred acts, such that it can be said that the acts are all
part of the same pattern of discrimination." Id. (citation
omitted).  The discriminatory conduct must also be continuous or
ongoing. Id.

The Court finds that Plaintiff fails to establish that the
alleged conduct regarding his brother amounts to a continuing
violation that saves his claims from being time-barred.  The

-17-

incident occurred approximately six months after Plaintiff left the Robbery Division.  There is no indication in the record that this incident had any connection to any alleged harassment or discriminatory treatment that Plaintiff suffered in the Robbery Division.  Because the Court has found that the May, 2003, incident regarding Plaintiff's brother was not part of any allegedly continuing violation, Plaintiff's §§ 1981, 1983 and 1985(3) claims are time-barred.  Accordingly, Defendants' motions to dismiss those claims are GRANTED and Plaintiff's §§ 1981, 1983 and 1985(3) claims are DISMISSED.

### 2. Qualified Immunity

Even if Plaintiff's claims were timely, however, the Court finds that Defendants Major O'Byrnes and Lt. Hightower are entitled to qualified immunity for their acts.  The doctrine of qualified immunity protects government officials who perform discretionary functions from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Beard v. Whitmore Lake School Dist., 402 F.3d 598, 602-03 (6th Cir. 2005)(citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  Qualified immunity is applicable to suits pursuant to §§ 1981, 1983 and 1985(3). See King v. City of Eastpointe, No. 01-2303, 86 Fed.Appx. 790, 801 (6th Cir. 2003) (finding qualified immunity applicable to suits pursuant to §§ 1981 and 1983); Vakilian v. Shaw, 335 F.3d 509, 519 (6th Cir. 2003)(analyzing qualified immunity defense in context of § 1985(3)

-18-

claim).

In <u>Beard</u>, the United States Court of Appeals for the Sixth Circuit described the three-part test for determining whether a grant of qualified immunity is proper:

> *First,* we determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred. *Second,* we consider whether the violation involved a clearly established constitutional right of which a reasonable person would have known. *Third,* we determine whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.

<u>Id.</u> at 603 (citing <u>Champion v. Outlook Nashville, Inc.</u>, 380 F.3d 893, 900-01 (6th Cir. 2004)).  "If the answer to all three questions is yes, then qualified immunity is not proper." <u>Id.</u> (citing <u>Champion</u>, 380 F.3d at 901).

Having reviewed the record and the parties' submissions, the Court finds that Plaintiff has failed to point to specific facts in the record to indicate that Defendants Major O'Byrnes and Lt. Hightower violated any of Plaintiff's clearly established constitutional rights, or that any actions they took were objectively unreasonable in light of such clearly established constitutional rights.  Rather, Plaintiff merely contends that Defendants violated the employment policies of the City of Memphis and the disciplinary standards of the Memphis Police Department. Plaintiff does not point to sufficient evidence in support of those allegations.  Accordingly, Defendants Major O'Byrnes and Lt.

Hightower are entitled to qualified immunity from Plaintiff's claims under §§ 1981, 1983 and 1985(3).

### 3. Judgment as a Matter of Law

In addition, even if Plaintiff's claims were timely, the Court finds that Plaintiff fails to point to sufficient evidence in the record to create any genuine issues of material fact with respect to his §§ 1981, 1983 and 1985(3) claims and therefore that Defendants are entitled to judgment as a matter of law regarding those claims.

### i. 42 U.S.C. § 1981

Section 1981 "prohibits racial discrimination in the making and enforcing of private contracts." Noble v. Brinker Int'l., Inc., 391 F.3d 715, 720 (6th Cir. 2004). "The elements of [a] prima facie case as well as the allocations of the burden of proof are the same for employment claims stemming from Title VII and § 1981." Id. (quoting Johnson v. Univ. of Cincinnati, 215 F.3d 561, 573 n. 5 (6th Cir. 2000)). Because the Court has granted Defendant's motion for summary judgment as to Plaintiff's Title VII claims of race discrimination, harassment, and retaliation, Defendants' motions for summary judgment as to Plaintiff's race discrimination claims under 42 U.S.C. § 1981 are GRANTED and Plaintiff's § 1981 claims are DISMISSED.

### ii. 42 U.S.C. § 1983

Section 1983 does not create substantive rights, but rather serves as a "method for vindicating federal rights elsewhere

-20-

conferred." Baker v. McCollan, 443 U.S. 137, 144, n.3 (1979).  To

establish a *prima facie* case under § 1983, a plaintiff must prove

two elements: (1) that the government action occurred "under color

of law" and (2) that the action is a deprivation of a

constitutional right or federal statutory right.  Parratt v.

Taylor, 451 U.S. 527, 535 (1981); Block v. Ribar, 156 F.3d 673, 677

(6th Cir. 1998).  "The first step in any such claim is to identify

the specific constitutional right allegedly infringed."  Albright

v. Oliver, 510 U.S. 266, 271 (1994).  In his Complaint, Plaintiff

contends that "Defendants O'Byrne, Ballard, Hightower and Embry

acted under color of state law individually and in concert to deny

the plaintiff equal protection under the 14th Amendment to the

Constitution, as well as due process rights under said amendment"

in violation of 42 U.S.C. § 1983. (Pl.'s Compl. ¶ 50.)

      Having reviewed the record and the parties' submissions,

however, the Court finds that Plaintiff fails to point to

sufficient evidence in the record to create a genuine issue of

material fact regarding whether Defendants violated his rights to

due process or equal protection of the laws under the Fourteenth

Amendment.  Accordingly, Defendants motions for summary judgment

regarding Plaintiff's claims under § 1983 are GRANTED and

Plaintiff's § 1983 claims are DISMISSED.

### iii. 42 U.S.C. § 1985(3)

      Section 1985(3) prohibits a conspiracy "for the purpose of

depriving either directly or indirectly, any person or class of

persons of the equal protection of the laws or of equal privileges and immunities under the laws." <u>Radvansky v. City of Olmsted Falls</u>, 395 F.3d 291, 314 (6th Cir. 2005)(quoting 42 U.S.C. § 1985(3)).  To prevail on a § 1985(3) claim, a plaintiff must prove: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." <u>Id.</u> (citations and internal quotation marks omitted).  Further, "the Supreme Court has stated that '[t]he language requiring intent to deprive of equal protection, or equal privileges and immunities, means there must be some racial or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions.'" Id. (quoting <u>Griffin v. Breckenridge</u>, 403 U.S. 88, 102 (1971)).

Plaintiff contends in his Complaint that Defendants O'Byrne, Ballard, Hightower and Embry agreed and conspired to associate and combine for the purpose of racial harassment, oppression and discrimination in violation of 42 U.S.C. § 1985(3).  Having reviewed the record and the parties' submissions, however, the Court finds that Plaintiff has failed to point to sufficient evidence in the record to create a genuine issue of material fact regarding whether Defendants Major O'Byrnes and Lt. Hightower conspired to deprive him of the equal protection of the laws or of

equal privileges or immunities of the laws.  In particular, Plaintiff points to no evidence that Defendants harbored any racial or otherwise class-based, invidiously discriminatory animus towards the Plaintiff.  Accordingly, Defendants' motions for summary judgment regarding Plaintiff's § 1985(3) claims are GRANTED and Plaintiff's § 1985(3) claims are DISMISSED.

## IV. CONCLUSION

For the reasons stated, Defendants' motions for summary judgment are GRANTED and Plaintiff's claims are DISMISSED as to the City of Memphis, Major O'Byrnes, and Lt. Hightower.[5]  A telephone conference is set for 9:00 a.m. on September 22, 2005 to set the schedule for deposition of the claims remaining as to Lts. Ballard and Embry in this case.


SO ORDERED this __29__ day of August, 2005


JON P. McCALLA
UNITED STATES DISTRICT JUDGE


---

[5] Defendant Lts. Ballard and Embry did not file motions for summary judgment in this case.

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 50 in case 2:03-CV-02991 was distributed by fax, mail, or direct printing on August 30, 2005 to the parties listed.

---

Ricky E. Wilkins
LAW OFFICE OF RICKY E. WILKINS
119 S. Main St.
Ste. 700
Memphis, TN 38103

Timothy P. Taylor
GODWIN MORRIS LAURENZI & BLOOMFIELD, P.C.
50 N. Front St.
Ste. 800
Memphis, TN 38103

Sharon Harless Loy
LAW OFFICE OF RICKY E. WILKINS
119 S. Main St.
Ste. 700
Memphis, TN 38103

Wanda Abioto
LAW OFFICE OF WANDA ABIOTO
1555 Madison Ave.
Memphis, TN 38104

Honorable Jon McCalla
US DISTRICT COURT